IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MARC S.J., individually and on behalf of M.S.J., a minor,<br><br>　　　　　　　　Plaintiff,<br>v.<br><br>AETNA LIFE INSURRANCE COMPANY; THE MITRE CORPORATION, and the AETNA FLEX CARE PPO PLAN,<br><br>　　　　　　　　Defendants. | MEMORANDUM DECISION GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS<br><br>Case No. 2:24-cv-00693-TS-CMR<br><br>District Judge Ted Stewart<br><br>Magistrate Judge Cecilia M. Romero |

　　　　This matter is before the Court on Defendants' Motion to Dismiss. For the reasons discussed below, the Court will grant the Motion in part and deny it in part.

I.  BACKGROUND

　　　　The following facts are taken from Plaintiff's Complaint. Plaintiff was a participant in the MITRE Corporation's health insurance plan (the "Plan"), a welfare benefits plan subject to the Employee Retirement Income Security Act of 1974 ("ERISA"). M.S.J. was Plaintiff's dependent and a beneficiary under the Plan. Aetna was the claims administrator for the Plan.

　　　　M.S.J. received treatment at blueFire Wilderness Therapy. blueFire is located in Idaho and is a licensed Children's Therapeutic Outdoor Program. A "'[c]hildren's therapeutic outdoor program' is a program designed to provide behavioral, substance abuse, or mental health services to minors in an outdoor setting."[1]

---

[1] Idaho Code Ann. § 39-1202(8).

1

Aetna denied payment for M.S.J.'s treatment at blueFire. Plaintiff now brings claims under ERISA and the Mental Health Parity and Addiction Equity Act ("MHPAEA" or "Parity Act").

## II. MOTION TO DISMISS STANDARD

In considering a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), all well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to Plaintiff as the nonmoving party.[2] Plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[3] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[4] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[5]

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[6] As the Court in *Iqbal* stated,

> only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the

---

[2] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[4] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[5] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557) (alteration in original).

[6] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief.[7]

In considering a motion to dismiss, a district court considers not only the complaint "but also the attached exhibits,"[8] the "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[9] The Court "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[10]

### III.  DISCUSSION

A.  ERISA

ERISA allows a participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan."[11] Under the terms of the Plan, coverage is allowed for "covered services," which excludes services "listed as an exclusion in this section or the General plan exclusions section."[12] Wilderness treatment is listed as an excluded service in four locations in the Plan. First, "wilderness treatment programs, or any such related or similar programs" are excluded from the definition of behavioral health treatment.[13] Next, wilderness treatment programs are included as an example of educational services, which are also excluded from

---

[7] *Iqbal*, 556 U.S. at 679 (internal citations, quotation marks, and alterations omitted).

[8] *Commonwealth Prop. Advocs., LLC v. Mortg. Elec. Registration Sys., Inc.*, 680 F.3d 1194, 1201 (10th Cir. 2011).

[9] *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

[10] *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[11] 29 U.S.C. § 1132(a)(1)(B).

[12] Docket No. 8-1, at 6. The Plan terms for the 2021 and 2022 Plans are the same with respect to the relevant provisions, so the Court will reference the 2021 Plan.

[13] *Id.* at 31.

coverage.[14] Then, wilderness treatment programs are excluded as a whole, with reference back to the educational services section of the Plan.[15] Finally, the definition of residential treatment facility—defined as licensed and accredited mental health or substance related disorder residential treatment programs—excludes wilderness treatment programs.[16]

While the plain language of the Plan suggests that M.S.J.'s treatment at blueFire—a therapeutic outdoor program—falls within the wilderness treatment exceptions of the Plan, Plaintiff argues that blueFire meets the definition of behavioral health provider, which is a covered service. The Plan covers treatment by a "behavioral health provider."[17] A behavioral health provider, in turn, is "[a] health professional who is licensed or certified to provide covered services for mental health and substance related disorders in the state where the person practices."[18] A health professional is "[a] *person* who is authorized by law to provide health care services to the public; for example, physicians, nurses."[19] Both behavioral health provider and health professional are bolded terms, which are specifically defined in the Plan.[20] As a licensed Children's Therapeutic Outdoor Program, blueFire cannot be a health professional under the terms of the Plan because it is not a person. Therefore, Plaintiff's request for benefits for treatment at blueFire must be rejected.

---

[14] *Id.* at 32.

[15] *Id.* at 35.

[16] *Id.* at 61.

[17] *Id.* at 7.

[18] *Id.* at 57.

[19] *Id.* at 58 (emphasis added).

[20] *Id.* at 4 ("Words that are in bold, we define them in the *Glossary* section"). The Court "adhere[s] to definitions the parties adopt." *E.W. v. Health Net Life Ins. Co.*, 86 F.4th 1265, 1286 (10th Cir. 2023).

B.    PARITY ACT

"Congress enacted the [Parity Act] to end discrimination in the provision of insurance coverage for mental health and substance use disorders as compared to coverage for medical and surgical conditions in employer-sponsored group health plans."[21] The Act requires that a plan's treatment and financial limitations on mental health or substance abuse disorder benefits be no more restrictive than the limitations for medical and surgical benefits.[22]

The Parity Act's implementing regulations state:

> A plan (or health insurance coverage) may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage), as written and in operation, any processes, strategies, evidentiary standards, or other factors used in designing and applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in designing and applying the limitation with respect to medical/surgical benefits in the classification.[23]

To state a claim, Plaintiff must

> (1) plausibly allege that the relevant group health plan is subject to MHPAEA; (2) identify a specific treatment limitation on mental health or substance-use disorder benefits covered by the plan; (3) identify medical or surgical care covered by the plan that is analogous to the mental health or substance-use disorder care for which the plaintiffs seek benefits; and (4) plausibly allege a disparity between the treatment limitation on mental health or substance-use disorder benefits as compared to the limitations that defendants would apply to the medical or surgical analog.[24]

---

[21] *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 356 (2d Cir. 2016).

[22] *See* 29 U.S.C. § 1185a(a)(3)(A)(ii).

[23] 29 C.F.R. § 2590.712(c)(4)(i)(A).

[24] *E.W.*, 86 F.4th at 1283.

5

A Parity Act claim can be brought as either a facial challenge or an as-applied challenge.[25] "A facial challenge focuses on the terms of a plan."[26] "By contrast, as-applied challenges focus on treatment limitations that a plan applies in operation."[27] For an as-applied challenge, a plaintiff must prove that a "defendant differentially applies a facially neutral plan term."[28]

As set forth above, the Plan language is not a model of clarity. While there appears to be a general exclusion for wilderness programs,[29] the Plan specifically excludes wilderness programs from the definition of residential treatment facilities for mental health and substance abuse.[30] There is no similar exclusion under the definition skilled nursing facilities,[31] the medical/surgical analog. Further, the general exclusion refers back to an exclusion for educational services, which is not medical/surgical in nature. Finally, wilderness treatment programs are listed under the exclusion for behavioral health treatment.

Under these circumstances, the Court concludes that Plaintiff has adequately pleaded a facial challenge under the Parity Act. It is plausible that the plan sets different standards for behavioral treatment than it does for its surgical/medical analog. Further, while Plaintiff's allegations related to an as applied challenge are sparse, this Court has found similar allegations

---

[25] *Id.* at 1284.

[26] *Id.*

[27] *Id.* (internal quotation marks and citation omitted).

[28] *Id.* (internal quotation marks and citation omitted).

[29] Docket No. 8-1, at 35.

[30] *Id.* at 31, 61.

[31] *Id.* at 61.

sufficient to survive dismissal given the disparity of information possessed by the parties.[32]

Therefore, the Court declines to dismiss Plaintiff's Parity Act claim.

IV. CONCLUSION

It is therefore

ORDERED that Defendants' Motion to Dismiss (Docket No. 8) is GRANTED IN PART AND DENIED IN PART as set forth above.

DATED this 2nd day of September, 2025.

BY THE COURT:

_____
Ted Stewart
United States District Judge

---

[32] *Michael W. v. United Behavioral Health*, 420 F. Supp. 3d 1207, 1237 (D. Utah 2019); *Theo M. v. Beacon Health Options*, No. 2:19-cv-364-JNP, 2020 WL 5500529, at *6 (D. Utah Sept. 11, 2020); *Heather E. v. Cal. Physicians' Servs.*, No. 2:19-cv-415-CW, 2020 WL 4365500, at *3–4 (D. Utah July 30, 2020); *Denise M. v. Cigna Health*, No. 2:19-CV-975-DAK, 2020 WL 3317994, at *2 (D. Utah June 18, 2020); *M.S. v. Premera Blue Cross*, No. 2:19-cv-199-RJS, 2020 WL 1692820, at *5 (D. Utah Apr. 7, 2020); *David P. v. United Healthcare Ins. Co.*, No. 2:19-cv-00225-JNP-PMW, 2020 WL 607620, at *19 (D. Utah Feb. 7, 2020).